UNITED STATES v. McCallum *et al.*

(*Circuit Court, D. Massachusetts.* January 16, 1891.)

1. IMMIGRATION—CONTRACT LABOR—NEW INDUSTRIES.

Defendants contracted with a resident of France to come to this country and work for them in the manufacture of "French silk stockings," which were shown to be articles materially different from ordinary silk stockings. It was shown that there had been manufactured here stockings whereof the feet were the same as those of the "French silk stockings," but the legs were different, and made by different machines. *Held*, that the manufacture of the complete "French silk stockings" was a new industry, within the exemption of 23 St. U. S. p. 332, c. 164, imposing a penalty on the importation of contract labor.

2. SAME—NECESSITY—EVIDENCE.

Machines for the manufacture of "French silk stockings" were already in use in this country for knitting the feet, and there was evidence that a skillful workman might learn to run them in a few weeks. It was shown for defendants that their machines stood idle until they imported the Frenchman in question, and that they

had advertised for men to run them, but had failed to find any that were competent. *Held,* that the evidence did not disclose such efforts on defendants' part as to show a necessity to resort to foreign workmen, and they are liable for the penalty.

At Law.

*Frank D. Allen,* Dist. Atty., and *Henry A. Wyman,* Asst. Dist. Atty., for the United States.

*George M. Stearns* and *William H. Brooks,* for defendants.

CARPENTER, J. This is an action brought to recover a penalty under chapter 164 of the Acts of the Second Session of the Forty-Eighth Congress, (23 St. 332,) and was heard by the court without a jury.

It appeared that the defendants, on the 20th of October, 1885, contracted with Paul Glouton, resident at Troyes, in France, to emigrate to this country and work for them, at their factory in Holyoke, in Massachusetts, in the manufacture of silk stockings, and that he accordingly emigrated to this country, and commenced, and for a considerable time continued, to work under the contract. The defendants contend that Glouton's engagement was to work for them in a new industry not established in the United States. The testimony shows that for several years before 1885 silk stockings had been manufactured with considerable success in this country, there having been at different times manufactories in Laconia, in New Britain, in Northampton, in Waltham, and perhaps in other places. It appears, however, that there is a certain sort of silk stockings known as "French silk stockings," which, before the year 1885, had not been made in this country. They differ from the other sorts of silk stockings in two particulars: *First,* in having only a single seam in the foot; and, *secondly,* in a certain firmness and elasticity, and a certain smoothness of surface, which are due to the peculiar structure and operation of the French knitting-machines. Before that year these French machines had been imported and successfully used in this country in the manufacture of silk stockings whereof the feet had the characteristics of the genuine French stocking, while the legs were knitted in machines of other construction; but it appears that the complete product known as a "French silk stocking," having both feet and legs knitted on French machines, had never been produced in this country. Under these circumstances, I conclude that the manufacture of this peculiar sort of goods is to be considered as a new industry not then established, within the meaning of the statute. I think the statute intends to except from the penalty therein denounced the manufacture of any distinctly new product, whether it be or be not included within a general class of goods now produced among us. The manufacture of stockings was established, and probably it may be said that the manufacture of silk stockings was established, before the passage of the statute. But the product here in question differs in appearance, in certain useful qualities, and, to some extent, in the method of manufacture from anything theretofore made; and I think the making of it is to be called a new industry.

The question next to be considered is whether skilled labor for the purpose could have been obtained otherwise than by the bringing in of

Glouton. French machines were already in use for the knitting of stocking feet, and it does not appear that the operation of these machines is materially different in the manufacture of the feet and the legs of stockings. Glouton gives it as his opinion that a skillful workman, (meaning doubtless a skillful knitter,) after a few weeks, could learn to run them. The workman Oliver, who was skilled in English machines, learned to run the French machine without instruction at Northampton. The defendant McCallum testifies that the French machines imported by his firm stood idle from March until Glouton came to operate them; that they were broken when they first came, and required to be put in order, and in the mean time the defendants were attempting to get men to run them. It appears that they advertised in newspapers published in those neighborhoods where knitting is done; that one of their workmen wrote to two relatives in Nebraska, who, as he supposed, could run the machines; and that they were not able to find any person competent to do the work. It also appears that two of their workmen attempted, without success, to run the machines. On consideration of the whole evidence, I come to the conclusion that the defendants have not used such reasonable efforts to run their machines as would have disclosed the fact they must resort to foreign workmen; and that such reasonable efforts would have enabled them to discover or to train workmen competent to do the desired work. The defendants are therefore liable to the penalty of the statute.